## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES N. ROMERO,

       Plaintiff,

v.

                                  Case No. 13-4040-DDC-GLR

BANK OF AMERICA, NA,

       Defendant.

_____

## MEMORANDUM AND ORDER

Plaintiff Charles N. Romero brings this lawsuit against defendant Bank of America, NA, asserting claims for breach of a Home Affordable Modification Program ("HAMP") contract and violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* These claims arise out of defendant's servicing of plaintiff's residential mortgage loan. This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. 19). For the reasons explained below, the Court grants defendant's Motion for Summary Judgment.

### I.      Procedural Background

On May 21, 2014, defendant filed its Motion for Summary Judgment (Doc. 19). Plaintiff's response to that motion was due on June 11, 2014. *See* D. Kan. Rule 6.1(d)(2) (responses to motions for summary judgment must be filed and served within 21 days). On June 20, 2014, plaintiff filed a Motion for Extension of Time to File a Response to the Motion for Summary Judgment (Doc. 21), requesting a 90 day extension of time to file his response to defendant's summary judgment motion. The Court granted plaintiff's motion and ordered plaintiff to file a response to defendant's summary judgment motion on or before September 20,

2014.  That deadline has long since passed, and plaintiff has not filed a response to defendant's summary judgment motion.

Because plaintiff has not responded to defendant's summary judgment motion, the Court may "consider and decide the motion as an uncontested motion."  *See* D. Kan. Rule 7.4(b).  "Ordinarily, the court will grant the motion without further notice."  *Id.*  But a party's failure to respond to a summary judgment motion—alone—is not a sufficient basis on which to enter judgment.  *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).  Instead, the Court must determine whether judgment for the moving party is appropriate under Fed. R. Civ. P. 56.  *Id.*  Therefore, the Court considers the merits of defendant's summary judgment motion below.

But because plaintiff failed to file a response, he waives the right to respond or controvert the facts asserted in defendant's summary judgment motion.  *Reed*, 312 F.3d at 1195.  Thus, the Court accepts as true all material facts asserted and properly supported in defendant's summary judgment motion, as identified in the analysis below.  *Id.*

## II.     Uncontroverted Facts

The following facts either have been stipulated by the parties in the Pretrial Order (Doc. 14) or are uncontroverted.

Plaintiff obtained a mortgage loan for $184,500 from First Franklin Loan Services ("First Franklin") in March 2006.  The loan was secured by a mortgage on plaintiff's residence, located at 5521 E. 67th Street, Mission, Kansas.

First Franklin offered plaintiff a Home Affordable Modification Trial Period Plan (the "TPP") for the Loan with an effective date of August 1, 2010.  The TPP required plaintiff to make three trial plan payments in the amount of $1,348.25 each, on or before August 1, 2010, September 1, 2010, and October 1, 2010, respectively.  The TPP provides, in relevant part:

> If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

TPP at ¶ 2.E (Doc. 20-1 at 26).  Plaintiff signed the TPP on July 27, 2010.  First Franklin did not sign the TPP.

First Franklin issued a Home Affordable Modification Agreement (Step Two of Two-Step Documentation Process) (the "HAMP Agreement") to plaintiff.  Section 3 of the HAMP Agreement provides:

> If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on November 1, 2010 (the "Modification Effective Date") and all the unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect.  The first modified payment will be due on November 1, 2010.

HAMP Agreement at ¶ 3 (Doc. 20-1 at 34).  The representations in Section 1 include the representation that "I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan."  *Id.* at ¶ 1.G (Doc. 20-1 at 34).

The acknowledgements and preconditions in Section 2 of the HAMP Agreement provide:

> A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this

>Agreement will terminate.  In this event, the Lender will have all of the
>rights and remedies provided by the Loan Documents.
>
>B.    I understand that the Loan Documents will not be modified unless and
>until (i) I receive from the Lender a copy of this Agreement signed by the
>Lender; and (ii) the Modification Effective Date (as defined in Section 3)
>has occurred.  I further understand and agree that the Lender will not be
>obligated or bound to make any modification of the Loan Documents if I
>fail to meet any one of the requirements under this Agreement.

*Id.* at ¶ 2 (Doc. 20-1 at 34).

Plaintiff signed and returned the HAMP Agreement to First Franklin.  Neither First Franklin nor defendant signed the HAMP Agreement.

In October 2010, defendant acquired the servicing rights to plaintiff's loan from First Franklin.  Defendant received records from First Franklin showing that plaintiff had made only two of the three required trial plan payments before October 1, 2010.  Defendant did not receive the third trial payment from plaintiff before November 1, 2010.  Defendant refused to honor the modification set forth in the HAMP Agreement, and instead required plaintiff to pay the monthly payment due under the unmodified mortgage.

Defendant's business records reflect that since October 2010, it has received four payments of $1,350 each from plaintiff, on August 17, 2011, September 30, 2011, February 3, 2012, and April 9, 2012, and another payment of $1,350 on July 9, 2012, which plaintiff's bank returned for insufficient funds to pay the check.  On November 5, 2012, defendant sent plaintiff a Notice of Intent to Accelerate and Foreclose, which reflects that plaintiff was required to pay by December 15, 2012, a total amount of $78,888.26, to cure the default.

Plaintiff sent defendant a letter dated October 10, 2012, which purported to be a qualified written request ("QWR") for purposes of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).  Plaintiff sent this letter to 6200 Tennyson Pkwy, Suite 110, Plano, Texas

75024-6100.  Defendant's designated address for receipt of QWRs for purposes of RESPA is P.O. Box 942019, Simi Valley, CA 93094-2019, as stated in the monthly mortgage statements defendant sent to plaintiff (Doc. 20-1 at 44, 46).

### III.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co*., 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.  Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

## IV.   Analysis

### A.  Breach of the HAMP Agreement

Plaintiff asserts that defendant breached the HAMP Agreement by ignoring the loan modifications authorized and implemented under that contract and instead charged plaintiff the monthly payment due under the unmodified mortgage and assessed late fees and other charges for plaintiff's violations of the terms of the unmodified mortgage.  Defendant responds that plaintiff failed to satisfy the conditions precedent to the loan modification, and therefore the HAMP Agreement never became effective.  Thus, defendant asserts that it did not breach the terms of the HAMP Agreement because that contract never took effect.

A condition precedent[1] is:

---

[1]    The parties do not state specifically what law governs the HAMP Agreement; however, defendant cites two Kansas Supreme Court cases defining a "condition precedent."  The Court therefore relies on Kansas law, but notes that this choice of law issue is not pivotal because the law defining condition precedent to contract formation is similar from state-to-state.

6

> 'something that it is agreed must happen or be performed before a right can
> accrue to enforce the main contract. It is one without the performance of which
> the contract, although in form executed and delivered by the parties, cannot be
> enforced. A condition precedent requires the performance of some act or the
> happening of some event after the terms of the contract, including the condition
> precedent, have been agreed on before the contract shall take effect.'

*Sweet v. Stormont Vail Reg'l Med. Ctr.*, 647 P.2d 1274, 1280 (Kan. 1982) (quoting *Wallerius v.*

*Hare*, 399 P.2d 543, 547 (Kan. 1965)). If a condition precedent does not occur or is not

performed, the contract does not take effect and is unenforceable. *Arnold v. S.J.L. of Kan. Corp.*,

822 P.2d 64, 68 (Kan. 1991) (citations omitted); *see also B-B Co. v Piper Jaffray & Hopwood,*

*Inc.*, 931 F.2d 675, 678 (10th Cir. 1991) (under Wyoming law[2] "[n]on-occurrence of a condition

precedent discharges the other party's duty of performance" under a contract) (citing

Restatement (Second) of Contracts § 275(1) and (2) (1981))).

Here, it is uncontroverted that the TPP required plaintiff to make three trial plan

payments of $1,348.25, on or before August 1, 2010, September 1, 2010, and October 1, 2010,

respectively. Plaintiff admits that he did not make all three trial payments on or before the

deadline. The TPP further provides that if plaintiff fails to make the trial plan payments, "the

Loan Documents will not be modified and this Plan will terminate." TPP at ¶ 2.E (Doc. 20-1 at

26). The TPP also states that plaintiff "understand[s] and agree[s] that the Servicer will not be

obligated or bound to make any modification of the Loan Documents if [plaintiff] fail[s] to meet

any one of the requirements under this Plan." *Id.*

In addition, the HAMP Agreement states that the loan modification described in that

agreement will not take effect if the borrower "failed to make any payments as a precondition to

this modification under a workout plan or trial period plan . . . ." HAMP Agreement at ¶ 3 (Doc.

---

[2]     As noted above, the Court applies Kansas law here but cites this Tenth Circuit case (although it
applies Wyoming law) because it states a general principle of law governing conditions precedent that
does not vary significantly from Kansas law.

20-1 at 34).  The HAMP Agreement also includes a representation by the borrower that he has

"made or will make all payments required under a Trial Period Plan or Loan Workout Plan."  *Id.*

at ¶ 1.G (Doc. 20-1 at 34).

      The HAMP Agreement also contains acknowledgments that:

A.    *If prior to the Modification Effective Date* as set forth in Section 3 *the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.*  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents.

B.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender; and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  *I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.*

*Id.* at ¶ 2 (Doc. 20-1 at 34) (emphasis added).

      The uncontroverted facts establish that plaintiff made only two of the three required trial

plan payments before November 1, 2010 (the effective date of the loan modification as stated in

the HAMP Agreement).  Thus, plaintiff failed to satisfy the conditions precedent to the HAMP

Agreement taking effect.  Under the terms of that Agreement, plaintiff's failure to satisfy those

conditions terminated the HAMP Agreement, and defendant had no obligation to make any

modification to the loan documents.

      In addition, the HAMP Agreement includes the condition precedent that the lender must

sign the HAMP Agreement before the loan documents are modified.  HAMP Agreement at ¶ 2

(Doc. 20-1 at 34) ("I understand that the Loan Documents will not be modified unless and until

(i) I receive from the Lender a copy of this Agreement signed by the Lender . . . .").  It is

uncontroverted that neither First Franklin nor defendant signed the HAMP Agreement.

Therefore, another condition precedent to the contract did not occur, thereby rendering the HAMP Agreement ineffective and unenforceable.

Because plaintiff did not satisfy the conditions precedent contained in the contract, the HAMP Agreement never took effect.  Consequently, plaintiff's claim for breach of the HAMP Agreement fails as a matter of law.

### B.  Violations of RESPA

RESPA is a "consumer protection statute enacted to regulate real estate settlement processes." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013) (citing 12 U.S.C. § 2601).  "Under RESPA, a servicer of a 'federally related mortgage loan' may be liable for damages to a borrower if it fails to adequately respond to a qualified written request (QWR)." *Id.* (citing 12 U.S.C. § 2605(e)-(f)).  RESPA requires the servicer of a federally related mortgage loan, upon receipt of a QWR, to acknowledge receipt and provide a written response within certain time periods.  12 U.S.C. § 2605(e)(1)-(2).[3]  RESPA also provides that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a [QWR] . . . a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . ." 12 U.S.C. § 2605(e)(3).

Plaintiff asserts that defendant violated RESPA in two ways:  (1) by failing to respond to a QWR that plaintiff mailed to defendant on October 10, 2012; and (2) by reporting information to consumer reporting agencies about overdue payments that plaintiff owed for the loan

---

[3]    When plaintiff mailed his letter on October 10, 2012, servicers had twenty days to acknowledge receipt of a QWR and sixty days to respond.  *See* 12 U.S.C. § 2605(e)(1)-(2) (2011).  As of January 10, 2014, servicers have five days to acknowledge receipt and thirty days to respond, subject to limited extensions.  *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1463(c), 124 Stat. 1376, 2184 (2010) (codified at 12 U.S.C. § 2605(e)(1)-(2),(4)).

referenced in the QWR after defendant received the QWR.  Defendant argues in response that

RESPA's requirements are triggered only if a servicer receives a QWR from a borrower, but, in

this case, plaintiff did not send the QWR to defendant's designated address for receipt of QWRs.

Thus, defendant argues that the letter sent by plaintiff does not qualify as a QWR under RESPA,

and therefore defendant is not liable for a violation of that Act.

When the events in this case took place, federal regulations allowed a servicer to

designate an address for receipt of QWRs.  *See* 24 C.F.R. § 3500.21(e)(1) ("By notice either

included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a

servicer may establish a separate and exclusive office and address for the receipt and handling of

qualified written requests."); *see also* 12 C.F.R. § 1024.21(e)(1) (same).[4]

In considering the federal regulation that allows a servicer to designate an address for

receipt of QWRs, the Tenth Circuit has explained that "RESPA and its implementing regulation

envisioned that only certain communications would trigger liability for damages under § 2605,

and delineated certain requirements for communications before imposing that liability."

---

[4]      The text of 24 C.F.R. § 3500.21(e)(1) and 12 C.F.R. § 1024.21(e)(1) is available in older editions
of the Code of Federal Regulations and electronically in the Federal Register.  *Hittle v. Residential
Funding Corp.*, No. 2:13-cv-353, 2014 WL 3845802, at *6 nn.4 & 5 (S.D. Ohio Aug. 5, 2014) (citing
Real Estate Settlement Procedures Act; Streamlining Final Rule, 61 Fed. Reg. 13,232, 13,250 (effective
Apr. 25, 1996); Real Estate Settlement Procedures Act (Regulation X), 76 Fed. Reg. 78,978, 78,997
(interim effective date Dec. 30, 2011)).

As the Southern District of Ohio explained in *Hittle*:

24 C.F.R. § 3500.21 was removed, effective July 16, 2014, as a result of Dodd–Frank and
transfer of authority to interpret RESPA from HUD to the Consumer Financial Protection
Bureau (CFPB).  *See* Removal of Regulations Transferred to the Consumer Financial
Protection Bureau, 79 Fed. Reg. 34,224 (effective July 16, 2014).  12 C.F.R. § 1024.21
was removed, effective January 10, 2014.  Mortgage Servicing Rules Under the Real
Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,702, 10,711,
10,718 (final rule effective Jan. 10, 2014) (deleting § 1024.21).  Currently, differently-
worded but somewhat similar provisions are codified under authority of the CFPB at 12
C.F.R. §§ 1024.35(c), 1024.36(b).

2014 WL 3845802, at *6 n.6.

*Berneike*, 708 F.3d at 1149 (citing *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667–68 (9th Cir. 2012)).  A communication that fails to meet the requirements of RESPA and its implementing regulation "amounts to nothing more than general correspondence between a borrower and servicer."  *Id.*  Instead, "[r]eceipt at the designated address is necessary to trigger RESPA duties . . . ."  *Id.*

In *Berneike*, the borrower faxed over a hundred different letters to a mortgage loan servicer claiming that the servicer had billed her incorrectly for overcharges and improper fees. *Id.* at 1143–44.  The borrower sent some of the letters to an address of the servicer in Illinois and others to an address of the servicer in Nevada, but neither of those addresses was the servicer's designated address for receiving QWRs.  *Id.* at 1143–44, 1146.  Because the borrower had failed to send the letters to the servicer's designated address, the Tenth Circuit held that receipt of the letters at the different addresses is insufficient to trigger the servicer's duties under RESPA.  *Id.* at 1149.  It thus affirmed the district court's dismissal of the borrower's RESPA claim under Fed. R. Civ. P. 12(b)(6).  *Id.*

The uncontroverted facts are similar here.  They establish that defendant designated an address for receipt of QWRs for purposes of RESPA.  That address is P.O. Box 942019, Simi Valley, CA 93094-2019, and it is listed as the designated address for receipt of QWRs in the monthly mortgage statements defendant sent to plaintiff.  Plaintiff failed to send the October 10, 2012 letter to that designated address.  Instead, plaintiff sent the letter to 6200 Tennyson Pkwy, Suite 110, Plano, Texas 75024-6100.  Under these facts, plaintiff's "[f]ailure to send the QWR to the designated address 'for receipt and handling of [QWRs]' does not trigger the servicer's duties under RESPA."  *Berneike*, 708 F.3d at 1149 (citing *Regions Hosp. v. Shalala*, 522 U.S. 448, 457

(1998)).  Therefore, defendant has not violated RESPA and is entitled to summary judgment on plaintiff's RESPA claims.

**V.      Conclusion**

Defendant has shown that there are no genuine issues of material fact, and therefore it is entitled to judgment as a matter of law against plaintiff's claims for breach of the HAMP Agreement and violations of RESPA.  Consequently, the Court grants summary judgment in favor of defendant on all claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendant's Motion for Summary Judgment (Doc. 19) is granted.

**IT IS SO ORDERED.**

**Dated this 21st day of January, 2015, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

12